OPINION
Appellant, Tanya Shchigelski, appeals from the Geauga County Court of Common Pleas, Juvenile Division, judgment entered on July 14, 1999, granting the Geauga County Department of Human Services ("DHS") motion for permanent custody of the dependent child, Andrew Shchigelski. Appellant's parental rights were terminated. The following facts are relevant to a determination of this appeal.
On December 26, 1997, appellee, the Geauga County Department of Human Services, filed a complaint pursuant to R.C. 2151.03(A) and R.C.2151.04(B) and (C) alleging that Andrew Shchigelski was a neglected and a dependent child. The complaint arose out of a domestic violence situation. On December 29, 1997, after an emergency hearing, temporary custody was granted to DHS pending the adjudicatory hearing. On February 19, 1998, the complaint was amended and appellant entered a plea of true to a complaint of dependency. The matter proceeded immediately to disposition. The court placed the child in the temporary custody of DHS for placement in foster care. A case plan was filed. The trial court made an additional order that should the parents, who were separated, decide to reconcile, that they participate in joint counseling "and not reunite until the counselor has so recommended."
At both the semi-annual and annual review hearings, the temporary custody of the child was continued. On February 16, 1999, the DHS filed a motion for permanent custody. The permanent custody hearing was conducted on June 23, 24, and July 2, 1999. In total, the DHS presented twenty witnesses in support of its motion for permanent custody.
Andrew was born on February 10, 1997, to Tanya and Sergio Shchigelski. In December of 1998, a pediatric neurologist, Dr. Levinsohn, conducted an examination of Andrew when he was twenty-three months old. The doctor indicated there was a very distinct possibility that Andrew had "autistic spectrum disorder" or "pervasive developmental disorder." The doctor indicated that because he did not perform observations over a long term (six months), he could not provide a definitive and compelling diagnosis. However, he testified that "irrespective of the ultimate diagnosis" raising a child with Andrew's type of clinical profile requires a tremendous amount of energy, cooperation, enthusiasm, and "a great deal of bonding."
With respect to Mr. Shchigelski, the DHS presented the testimony of Dr. Kaplur, a clinical psychologist, Dr. Vyroubal, M.D., and Julie Beckerman, a drug and alcohol counselor. Mr. Shchigelski was diagnosed as having a bipolar disorder, depression, borderline mental retardation, dysthemic disorder, and alcohol and cannabis dependence. Ms. Beckerman testified that she intended to recommend to Mr. Shchigelski that he participate in an intensive outpatient treatment program and attend three Alcoholics Anonymous meetings per week, however, Mr. Shchigelski did not return for his next appointment. Mr. Shchigelski had indicated to Ms. Beckerman that he did not need counseling or Alcoholics Anonymous.
With respect to appellant, the testimony established that appellant loved Andrew and wanted to raise him. She also made an effort to comply with portions of the case plan. She attended forty counseling sessions and regularly went to her visitation sessions. However, a number of problems persisted.
Appellant lived at the Hyde Park Apartments in Chardon, Ohio, until September or October of 1998, when her lease was terminated. The resident manager testified that the lease was terminated due to excessive disturbances caused by appellant and her husband. Mr. Shchigelski lived in, stayed at, or visited the apartment throughout the course of the year. The two frequently engaged in fighting and screaming and other behavior that constituted a nuisance to the neighbors. A Chardon police officer testified that the police had been called to the apartment twenty-four times in the last four years.
A number of witnesses testified for the DHS with respect to appellant's general fitness as a parent. Dr. Hill, the medical director of Ravenwood, testified that appellant had been diagnosed as bipolar and required medication, which was provided. Appellant's therapist at Ravenwood, Jodi Abbey-Hines, worked with appellant from February 1998 until June of 1999. Appellant met with her forty times. The objectives of the therapy were to work on anger management, impulse control, relationship skills, and to cope with the removal of Andrew. Ms. Abbey-Hines testified that appellant made some progress initially, but, appellant's attitude changed for the worse, and, as of April, 1999, appellant had not made significant progress. Ms. Abbey-Hines indicated appellant's prognosis was fair to poor due to appellant's continued resistance to working on her issues.
Appellant's DHS caseworker, Stacey Wilder, testified that, as of June 1999, appellant was only working on three of five of the case plan's objectives and that there was no significant progress. Ms. Wilder's biggest concern, which was expressed to appellant on multiple occasions, was appellant's continued relationship with Mr. Shchigelski. The unhealthy nature of this relationship caused the removal in the first place. While appellant was working on some of her case plan objectives, Mr. Shchigelski was not doing anything whatsoever. Thus, the conditions justifying the removal persisted. Both appellant and Mr. Shchigelski testified that they had been living together during the six months prior to the hearing. Both appellant and Mr. Shchigelski failed to make their child support payments for Andrew, appellant paying $77.11 out of $2,286.98 due, Mr. Shchigelski paying $460.92 out of $2,556.15 due.
The court appointed a CASA volunteer, Sharon Haynes, as the child's Guardian Ad Litem, on December 26, 1997. Ms. Haynes testified that appellant initially kept in touch with her, but in the eight months prior to the hearing, she had not been contacted by appellant and did not know how to get in touch with appellant. Her impression from her meetings with appellant was that, while appellant wanted Andrew back, she wanted to do things her way, and was resistant to DHS, as opposed to being cooperative.
On July 14, 1999, the trial court entered judgment granting DHS's motion for permanent custody. From this judgment, appellant timely filed notice of appeal, assigning the following errors:[1]
 "[1]. The trial court erred to the prejudice of the appellant in finding that the Geauga County Department of Human Services had made a good faith effort to implement the reunification plan.
 "[2]. The trial court's finding that the minor child could not be placed with appellant within a reasonable length of time was against the manifest weight of the evidence.
 "[3]. The trial court erred in its determination that permanent custody is in the best interest of the minor child."
 In her first assignment of error, appellant contends the trial court erred in finding that DHS made a good faith effort to implement the reunification plan. In fact, the trial court did not make such a finding, rather, it found that DHS applied reasonable case planning and diligent efforts in an attempt to remedy the problems that initially caused the child to be removed. While a requirement of a good faith effort has been implied from the applicable statutes, technically, the applicable standard requires the DHS to exercise reasonable case planning and to make diligent efforts to remedy the problems that initially caused the removal of the child from the home. R.C. 2151.414(E)(1); In re Marshall (July 12, 1996), Geauga App. No. 95-G-1934, unreported.
The requirement that the agency make a good faith effort to implement a reunification plan was set forth in In re Weaver (1992), 79 Ohio App.3d 59,63, 606 N.E.2d 1011. This court has previously addressed arguments presented on that basis. See In re Bacorn (Dec. 20, 1996), Portage App. No. 96-P-0015, unreported; In re Shaw (August 19, 1994), Trumbull App. No. 93-T-4865, unreported. However, in fact, the legislature eliminated the "good faith" requirement from R.C. 2151.414 with an amendment effective January 1, 1989. In re Jessica V. (Jan. 22, 1999), Lucas App. No. L-98-1016, unreported. In In re Jessica V., the Sixth Appellate District stated that the Weaver court simply applied the good faith standard without evaluating the statute, and consequently, was not technically correct. Id. The Sixth Appellate District further noted that the Twelfth Appellate District subsequently "`overruled its holding inWeaver, finding that pursuant to the statute, the appropriate inquiry is whether the agency made reasonable efforts to implement its reunification plan.'" (Citation omitted.) Thus, while a good faith effort may be inherent in the statute, the technically accurate inquiry, which the trial court did make in the matter sub judice, is whether the agency employed reasonable case planning and diligent efforts. The trial court found that it did. This finding is supported by the record.
Appellant was provided with a caseworker from DHS who reviewed the objectives and progress of the case plan with appellant on a monthly basis. Appellant was provided with a medical doctor who diagnosed her mental condition and prescribed medication. Appellant was provided with a therapist who worked with her on her emotional/psychological issues, scheduling fifty-four meetings from the inception of the case plan until the permanent custody hearing. Appellant was provided with a parenting aid who worked with her during her visitation periods with Andrew. Appellant was provided with a caseworker from the Metzenbaum Center who worked with her during visitations with Andrew at DHS on how to work with a developmentally disabled child. Appellant was provided with a caseworker from Ravenwood who assisted her with other issues. Appellant was assisted in maintaining her medication and her Medicaid and food stamp eligibility. She was also provided with subsidized housing. Appellant was repeatedly advised that her husband's basic default on his case plan and her continued relationship with him, under those circumstances, was very damaging to her case.
Appellant does not argue that the case plan was unreasonable. The record supports the trial court's finding that DHS made diligent efforts to remedy the problems that initially caused the child to be placed outside the home. Appellant's first assignment of error is without merit.
In appellant's second assignment of error, she contends the trial court's finding that the child could not be placed with appellant within a reasonable amount of time was against the manifest weight of the evidence. In the present case, the court had the authority to grant permanent custody of the child to DHS if the court determined, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to DHS and that the child, not being abandoned or orphaned, cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. R.C.2151.414(B); In re Jacobs (Aug. 25, 2000), Geauga App. No. 99-G-2231, unreported. In addressing the question of whether the child can be placed with either of its parents within a reasonable amount of time under R.C.2151.414(E), the court must consider all relevant evidence before making this determination. The juvenile court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.414(E)(1) through (12) exist with respect to each of the child's parents. Id. Clear and convincing evidence is more than a mere preponderance of the evidence. Instead, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368,481 N.E.2d 613. Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence. In the Matter of Taylor (June 11, 1999), Ashtabula App. No. 97-A-0046, unreported.
R.C. 2151.414(E) states in pertinent part:
 "* * * If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
"* * *
 "(11) The parent has had parental rights involuntarily terminated pursuant to section 2151.353 [2151.35.3], 2151.414 [2151.41.4], or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child."
 "`The issue is not whether the parent has substantially complied with the case plan, but whether the parent has substantially remedied the conditions that caused the child's removal.'" (Emphasis sic.) In re Marshall, supra, quoting In re McKenzie (Oct. 18, 1995), Wayne App. No. 95CA0015, unreported. In the present case the court found the parents had failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home, thus establishing R.C. 2151.414(E)(1). In particular, this was established clearly and convincingly by Mr. Shchigelski's basic default on his case plan, the failure of the two to obtain joint counseling, and their continued cohabitation under those circumstances. We cannot say the court erred in reaching this conclusion. This finding is sufficient to sustain the court's judgment but, additionally, factors (4) and (11) are also established by the record. While appellant did in fact demonstrate most of the forms of commitment enumerated in (E)(4), she did fail to pay her child support obligations. Mr. Shchigelski, on the other hand, demonstrated no commitment towards the child until the motion for permanent custody was filed and, then, only minimally. Factor (11) cannot be disputed, as a previous child of the parents was removed by permanent custody proceedings. Appellant's second assignment of error is without merit.
In appellant's third assignment of error, she contends that the trial court erred in determining that granting permanent custody to DHS was in the best interest of the child. In In re Marshall, supra, this court discussed the standard of review for the "best interest of the child" determination in a permanent custody proceeding.
 "The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. Moreover, the knowledge the juvenile court gains at the adjudicatory hearing through viewing the witnesses and observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony cannot be conveyed to a reviewing court by a printed record. See Seasons Coal Co. v. Cleveland (1984) 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Hence, this reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140
* * * (defining `abuse of discretion.')."
The statutory criteria for determining the best interest of a child in a permanent custody hearing are set forth in R.C. 2151.414(D), which states in pertinent part:
 "D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * * the court shall consider all relevant factors, including, but not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 The record in this case provided the court with ample evidence going to each of these factors. In its judgment entry, although not necessarily directly, the court discussed each of these factors with the exception of (D)(2). In this case, the child was too young to express his own wishes. However, the record indicates that the guardian ad litem's expert expressed the opinion that the child's best interest would be served by granting permanent custody to DHS. The trial court evaluated the interaction and interrelationship of the child with both appellant and Mr. Shchigelski. The trial court considered the custodial history of the child. The trial court considered the child's need for legally secure permanent placement.
We cannot say the trial court abused its discretion in reaching its conclusion that the child's best interests would be served by granting permanent custody to DHS. Appellant's third assignment of error is without merit.
The judgment of the trial court is affirmed.
 ____________________________ JUDGE ROBERT A. NADER
 CHRISTLEY, P.J., concurs, O'NEILL, J., dissents with dissenting opinion.
[1] We note that Sergio Shchigelski is not a party to this appeal. Although the juvenile court's decision divested him of all parental rights, Sergio did not appeal from judgment below.